**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ESURANCE INS. SERVS., INC.,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 13-5777** |
| **GARY WEBER, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

PRATTER, J.                                                                         JULY 2, 2014

Esurance Insurance Services asks the Court to determine whether Defendant Roseanne Weber is entitled to liability benefits to compensate her for injuries she sustained in a two-car accident that took place in Pennsylvania involving her husband Gary Weber (the driver of the car in which Ms. Weber was a passenger) and Gina Finio, the driver of the other car.[1] Esurance argues that a family member exclusion clause in the Webers' insurance agreement bars coverage, but the Webers argue that Pennsylvania law mandates coverage for Ms. Weber.

Both Esurance and the Webers seek summary judgment. Because the Court finds (1) that Florida law should apply to this dispute, and (2) that the family member exclusion clause is valid and enforceable under Florida law, the Court will grant Esurance's Motion for Summary Judgment and deny the Webers' motion.

---

[1] At oral argument, the Court asked the parties why Ms. Finio, who is not a party to the insurance contract in question and from whom no relief is sought in this case, was joined as a defendant in this action. None of the parties had an answer to this question, including the Plaintiff, who clearly made the decision to sue Ms. Finio. Ms. Finio has not joined in either of the motions for summary judgment, nor has she filed her own. As a result of granting the Esurance motion (which relates solely to the dispute between it and the Webers), Ms. Finio remains a defendant facing Esurance which remains as a plaintiff insofar as it sued Ms. Finio.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[2]

On December 20, 2012, an automobile accident occurred in Springfield Township, Pennsylvania, between a car driven by Gary Weber, a Florida resident, and a car driven by Gina Finio, a Pennsylvania resident.  Mr. Weber's wife, Roseanne, also a Florida resident, was a passenger in Mr. Weber's car and sustained personal injuries when the vehicles collided.

Gary Weber maintains automobile insurance, including liability insurance, through an Esurance policy issued in Florida. His car was licensed and registered in Florida. The Webers were residents of Florida at time the policy was issued and at the time of the accident.

The Esurance policy identifies Gary Weber as the named insured, and lists his wife as an additional insured.  The liability policy issued to Mr. Weber includes a family member exclusion clause that states that Esurance does "not provide Liability coverage for any 'insured' for bodily injury to 'you'" or any "family member."  Esurance Personal Auto Policy, Compl. Ex. A, p. 1-2 (Docket No. 1). The insurance policy also includes a provision dealing with out-of-state coverage, which reads:

> If an "accident" to which this policy applies occurs in any state or province
> other than Florida, "we" will interpret "your" policy for that "accident" as follows:
>> 1.   If the state or province has:
>>
>>> b. A compulsory insurance or similar law requiring a
>>> nonresident to maintain insurance wherever the non-
>>> resident uses an "auto," in that state or province, "your"
>>> policy will provide at least the required minimum
>>> amounts and types of coverage.

*Id.*at 7.

Following the accident, Ms. Weber instituted a civil action in the Court of Common Pleas of Philadelphia County, seeking to recover for her injuries arising out of the alleged negligence

---

[2] The following facts are drawn from the parties' Stipulation of Agreed Upon Facts, filed April 2, 2014 (Docket No. 13).

of her husband and Gina Finio. As a result, Esurance brought this declaratory judgment action,

joining Ms. Weber, Mr. Weber, and Ms. Finio. Esurance seeks a declaration that Ms. Weber is

not eligible to recover for bodily injury under the liability coverage provided by Mr. Weber's

automobile insurance policy.

## II.     LEGAL STANDARD

When opposing parties file dueling cross-motions for summary judgment, the governing

standard "does not change." *Clevenger v. First Option  Health Plan of N.J.*, 208 F. Supp. 2d

463, 468–69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J. 1998)). The

court must consider the motions independently, in accordance with the familiar standards

governing summary judgment.  *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184

(D.N.J. 2009); *Williams v. Philadelphia Hous. Auth.,* 834 F. Supp. 794, 797 (E.D.Pa.1993), *aff'd*,

27 F.3d 560 (3d Cir.1994).

Upon motion of a party, summary judgment in a federal case is appropriate if, "citing to

particular parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations, ... admissions, interrogatory answers, or

other materials," the moving party persuades the district court that "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a), (c); *Miller v. Ind. Hosp.,* 843 F.2d 139, 143 (3d Cir. 1988).

In evaluating a summary judgment motion, the court "must view the facts in the light

most favorable to the non-moving party," and make every reasonable inference in that party's

favor. *Hugh v. Butler Cty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005). If, after making all

reasonable inferences in favor of the non-moving party, the court determines that there is no

genuine issue of material fact, summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 217, 322 (1986); *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir.1987).

## III.   DISCUSSION

The parties present two issues in these cross motions.  The first requires a conflict of laws analysis. Esurance maintains that Florida has the greater interest (as opposed to Pennsylvania) in the application of its laws in interpreting the insurance contract at issue here, while Mrs. Weber contends that Pennsylvania law should apply to determine Esurance's obligations under the insurance contract. Second, if Florida law applies, the Court still must determine whether the family member exclusion clause in the contract conflicts with the contractual provision guaranteeing that Esurance will provide coverage that meets the so-called compulsory insurance requirements contained in Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), which requires nonresidents to maintain certain minimum amounts of liability coverage.

### a.  CONFLICT OF LAWS

Esurance argues that the court should apply Florida law to this dispute. Because the insurance policy was issued in Florida, the Webers are Florida residents, and the Webers' car was registered in Florida, Esurance maintains that Florida has a greater interest in the application of its laws. The Webers, on the other hand, maintain that Pennsylvania law should be applied to determine Esurance's obligations under the insurance policy. They argue that Pennsylvania law should control because the car accident occurred in Pennsylvania, involved another Pennsylvania resident (Ms. Finio), and Esurance conducts business in Pennsylvania.

In deciding which substantive law to apply, a court must look to the choice of law rules of the forum state where the complaint was filed – here, Pennsylvania.  *Klaxon Co. v. Stentor*

*Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania analysis first requires a determination of whether the laws of the competing states actually differ. *Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 571 (Pa. Super. Ct. 2005).  If there is a difference, an "interest analysis" must be performed. *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005). This involves a consideration of the policies of all interested states and  then – based on the result of the inquiry – a characterization of the case as a true conflict, false conflict, or unprovided-for case. *Id.*

A true conflict exists "when the governmental interests of both jurisdictions would be impaired if their law were not applied." *Id*. A false conflict exists if only "one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law." *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir. 2007).  If there is a false conflict, the court must apply the law of the only interested jurisdiction. *Chappell,* 407 F.3d. at 170.  A final possibility is an unprovided-for case, which arises when "no jurisdiction's interests would be impaired if its laws were not applied."[3] *Id.*

If a true conflict exists, a more detailed analysis is required. *Id.* The basis for this analysis was announced in *Griffith v. United Air Lines, Inc*., 203 A.2d 796, 805 (1964), which held that choice of law questions should be decided using a "flexible rule" that permits analysis of the "policies and interests underlying the particular issue before the court." *Id.* at 805. This rule represented an abandonment of the "lex loci delicti" rule, which looked to the place of the tort in deciding which substantive law to apply. *Id.* This flexible rule has evolved into the "hybrid approach" currently used in Pennsylvania for analyzing true conflicts of law, both in tort and, as in the case here, contract disputes.  *Hanover Ins. Co. v. Ryan*, 601 F. Supp. 2d 127 (E.D. Pa. 2007); *Wilson*, 889 A.2d at 571.

---

[3] In the situation where there is an "unprovided-for" case, courts should apply the traditional, "lex locus contractus" rule. *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 230 n.9 (3d Cir. 2007) (noting that the law of the state where the contract was made should be applied in these situations).

This "hybrid approach" combines both the Restatement (Second) of Conflicts approach (which looks to contacts establishing significant relationships) and an "interest analysis" (a qualitative appraisal of the relevant states' policies). *Bearden v. Wyeth*, 482 F. Supp. 2d 614, 619 (E.D. Pa. 2006). When the underlying issue involves a contract, such as an insurance policy, the court looks to the contacts each state has with the underlying transaction involving the policy, not to the contacts with the tort giving rise to the dispute. *Hammersmith v. TIG Ins. Co.,* 480 F.3d 220, 226-27 (3d Cir. 2007). For example, the location of the insurance company's office and the place where the contract was entered into are important considerations. *See, e.g., Cont'l Cas. Co. v. Diversified Indus., Inc*., 884 F. Supp. 937, 950-51 (E.D. Pa. 1995) (noting that considerable weight has been given to the location of an insurance company's office and where the decision to withhold benefits was made).

In addition to evaluating these contacts, relevant government considerations that a court should take into account include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971). If the case involves an insurance dispute, a state is accorded "significant interest in prescribing the standards that will govern the insurance contracts purchased by its residents to ensure that the insured and their beneficiaries will be accorded the coverage deemed adequate by the state." *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1313-4 (3d Cir. 1978).

In performing this analysis, the court should aim to apply the law of the state having the "most significant contacts or relationships with the particular issue." *In re Estate of Agostini*, 457

A.2d 861, 871 (Pa. Super. Ct. 1983).  Additionally, proper analysis depends not on the mere counting of contacts, but must be measured on a qualitative rather than quantitative scale. *Id.* That is, the relevant inquiry is to determine the "extent to which one state, rather than another, has demonstrated, by reason of its policies and their connection and relevance to the matter in dispute, a priority interest in the application of its rule of law." *Bearden,* 482 F. Supp. 2d at 619.

For example, in *Nationwide v. West*, the Pennsylvania Superior Court held that Ohio had a priority interest in applying its law to an insurance dispute arising out of a car accident that occurred in Pennsylvania. *Nationwide Mut. Ins. Co. v. West*, 807 A.2d 916, 922 (Pa. Super. Ct. 2002).  There, the passenger in the insured driver's car, a Pennsylvania resident, sought to recover under the UIM insurance policy of the driver, an Ohio resident, for the injuries sustained in the accident. *Id.* at 917. The court began by noting that the laws of Ohio and Pennsylvania were not actually in conflict. *Id.*at 920.  Pennsylvania law, which expressly mandates priority of coverage with respect to UIM insurance, did not directly conflict with Ohio law, which was simply silent on the issue. *Id*. Rather, the conflict was between a term of the insurance policy, issued in Ohio, and Pennsylvania law. *Id.* Even so, the court looked to the contacts that Ohio and Pennsylvania had with the underlying contract, and determined that the Ohio insurance policy should apply. *Id* at 921.  The insured was domiciled in Ohio, the policy was executed in Ohio,[4] and the vehicle registration was issued in Ohio. *Id.* at 921. Because Pennsylvania was merely the location of the accident, Ohio's contacts with the policy outweighed Pennsylvania's interest. *Id.*

---

[4] Courts in this District have noted, however, that the mere fact that an insurance policy was issued out of state is not determinative.  *Hanover Ins. Co. v. Ryan*, 601 F.Supp.2d 127, 136 (E.D. Pa. 2007). In *Hanover v. Ryan*, the court applied Pennsylvania law to an insurance dispute, despite the fact that the policy was first issued in NY. *Id.* The court found it persuasive that the insured had permanently moved to Pennsylvania, and was domiciled there at the time of the accident. *Id.* Therefore, the only possible "place of delivery" of the expected insurance benefits was Pennsylvania. *Id.* Lastly, the insured's car was currently registered in Pennsylvania, and the umbrella policy which covered the car had been renewed in Pennsylvania before the accident. *Id.*

Ohio, that is, had "a priority interest in the application of their law." *Bearden,* 482 F. Supp.2d at 619.

The first step in this case, then, is to determine whether the laws of Florida and Pennsylvania are actually different.[5] *Wilson,* 889 A.2d at 571.  Family member exclusions are valid under Florida law, but are generally deemed to be "invalid and against the policy behind the MVFRL" in Pennsylvania.[6] *See Reid v. State Farm Fire & Cas. Co.,* 352 So. 2d 1172 (Fla. 1977); *Sherwood v. Bankers Standard Ins.,* 621 A.2d 1015, 1017 (Pa. Super. Ct. 1993),  *rev'd on other grounds*, 648 A.2d 1171 (1994).  Additionally, even if the actual laws are not directly in conflict because Florida statutory law remains silent on the issue of family member exclusions, the liability clause in the Florida policy is still in conflict with Pennsylvania law under the MVFRL. *See West,* 807 A.2d at 920.

Next, the court must perform an "interest analysis," and determine if the governmental interests of Pennsylvania and Florida would be impaired if their laws were not applied.[7] *Chappell,* 407 F.3d at 170. The PA MVFRL reflects two main policy goals. The first involves a "concern for the spiraling consumer cost of automobile insurance and resultant increase in the number of uninsured motorists driving on public highways." *Paylor,* 640 A.2d at 1235. Secondly, the MVFRL was meant to "provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages

---

[5] The parties, apparently assuming that a true conflict exists, appear to have skipped this step.

[6] There are some instances where family member exclusions have been upheld under Pennsylvania law, when these clauses were part of an umbrella policy or underinsured motorist provisions. *See, e.g. Paylor v. Hartford Ins. Co.,* 640 A.2d 1234, 1241 (1994); *Elec. Ins. Co. v. Rubin*, 32 F.3d 814, 818 (3d Cir. 1994). However, "allowing the 'family car exclusion' to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL." *Paylor,* 640 A.2d at 1240.

[7] Again, the parties did not address this step in their arguments, instead fast-forwarding to an analysis of the contacts that each state has with the insurance contract at issue.

therefor from owners or operators of underinsured motor vehicles." *Sherwood,* 621 A.2d at 1017.

Enforcement of a family member exclusion clause impairs the interest that Pennsylvania has in

providing protection and compensation to all persons (family or not) suffering injury as a result

of negligent drivers.

The Florida Supreme Court has stated that "[t]he reason for [a family member] exclusion

is obvious: to protect the insurer from over friendly or collusive lawsuits between family

members." *Reid*, 352 So.2d at 1173. Moreover, even if Florida did not have a stated policy

interest in allowing family member exclusions, the *West* court skipped the analysis of competing

state interests when a clause in an out-of-state insurance contract explicitly conflicted with

Pennsylvania policies and law. *West,* 807 A.2d at 920. Thus, the Court must next analyze the

relevant contacts the states have with the underlying insurance contract.

Florida's contacts with the insurance policy outweigh Pennsylvania's interest in the

application of its law. *See Hammersmith,* 480 F.3d at 226-27. Mr. and Ms. Weber are residents

of Florida, and so the "place of delivery" for the insurance benefits would also be in that state.

*Ryan,* 601 F. Supp. 2d at 138 (recognizing that a court may look to the "place where the failure

to receive the expected benefits was felt" in determining which law to apply). Furthermore, the

insurance contract was entered into in Florida, and covers vehicles with Florida plates and

registration. *Caputo,* 495 A.2d at 962 (applying New Jersey law when the insurance policy was

issued in New Jersey to a New Jersey resident, despite the fact that the car accident occurred in

Pennsylvania). Lastly, the location of the insurance company's office is in Florida. *Cont'l Cas.*

*Co.,* 884 F. Supp. at 950-51 (recognizing that considerable weight has been given to the location

of the insurance company's office and the place where the decision to withhold benefits was

made). Although Esurance does conduct business in Pennsylvania, this factor does not outweigh

the quality and quantity of Florida's contacts.  Therefore, this Court holds that Florida has "a priority interest in the application of its law" and resolves this conflict of laws dispute in favor of Esurance's position on this point. *Bearden,* 482 F. Supp. 2d at 619.

### b.  CONTRACT INTERPRETATION

Even applying Florida law, the Court must still determine whether the Esurance contract entitles Ms. Weber to recover under the liability coverage policy, based on the contract's "out of state coverage" provision. This provision states that, if the injured is involved in a car accident in another state, Esurance will provide at least the minimum amounts and types of coverage required by the compulsory insurance law of that state. This clause, therefore, triggers the application of the relevant provisions of the MVFRL, which contains Pennsylvania's compulsory insurance law.  Specifically, § 1782(b) provides the relevant guidelines for nonresidents operating vehicles in Pennsylvania.[8] It reads:

> (b) **Nonresident.--**The nonresident owner of a motor vehicle not registered in this Commonwealth may give proof of financial responsibility by filing with the department a written certificate or certificates of an insurance company authorized to transact business in the state in which the motor vehicle or motor vehicles described in the certificate are registered or, if the nonresident does not own a motor vehicle, then evidence satisfactory to the department that the person does not own a motor vehicle. The department shall accept the certificate upon condition that the insurance company complies with the following provisions with respect to the policies so certified:
>> (2) The insurance company shall agree in writing that the policies shall be deemed to conform with the laws of this Commonwealth relating to the terms of motor vehicle liability policies issued in this Commonwealth.

75 Pa. C.S.A. § 1782(b)(2).  The language of this statute requires that non-resident owners of vehicles registered outside of  Pennsylvania give proof in the form of liability coverage "in the

---

[8]  The parties both cite and discuss 75 Pa. C.S.A. § 1786, which applies to cars *registered* in Pennsylvania.  That provision plainly has no application to this case, as the insurance contract here only promises to provide benefits required of policies held by nonresidents.

minimum amounts required by §1702 for vehicles registered in Pennsylvania." *Boone v.*

*Stonewall Ins. Co.,* 554 A.2d 968, 970 (Pa. Super. Ct. 1989); s*ee also Jarrett v. Pa. Nat'l Mut.*

*Ins. Co.,* 582 A.2d 327, 329 (Pa. Super. Ct. 1990). The relevant section requires:

> The ability to respond in damages for liability on account of accidents
> arising out of the maintenance or use of a motor vehicle in the amount
> of $15,000 because of injury to one person in any one accident, in the
> amount of $30,000 because of injury to two or more persons in any
> one accident and in the amount of $5,000 because of damage to property
> of others in anyone accident

75 Pa. C.S.A. §1702. The insurance policy issued to Mr. Weber by Esurance exceeds the

minimum required by §1702, as it provides for up to $250,000 in liability insurance.

Esurance contends that because its policy meets the minimum requirements for liability

insurance, its policy with the family member exclusion clause should be enforced. The Webers,

on the other hand, argue that enforcement of the family member exclusion clause would deny the

necessary minimum liability insurance to *all* claimants, and the policy is therefore still contrary

to Pennsylvania policy and law.

A court in this District has previously addressed this precise issue. *See State Farm Mut.*

*Auto. Ins. Co. v. Share*, No. 98-1549, 1998 WL 726665 (E.D. Pa. Oct. 16, 1998). [9] Faced with a

car accident in Pennsylvania involving spouses with a Florida auto insurance policy containing a

family member exclusion, the court concluded that "the Pennsylvania [Supreme] Court would

not disallow the household exclusion on the basis of the MVFRL's nonresident provision." *Id.* at

\*3. According to the *Share* court, this outcome is consistent with the MVFRL and would not

impair the interest of Pennsylvania residents. The court reasoned that the policy behind the

financial responsibility statute was to reduce the escalating costs of automobile insurance in the

---

[9] At oral argument, Ms. Weber argued that the policy language at issue in the *Share* case can be
distinguished from the Esurance policy language. While the language is, strictly speaking, not identical,
the Court finds that the "out of state" coverage provisions in both policies are indistinguishable in effect.

state, and that thwarting the clear intention of the family member exclusion of an insurance contract does not further this cost-containment policy under the MVFRL. Finally, the court noted that barring the enforcement of an agreed-upon family exclusion clause would be contrary to the reasonable expectations of the contracting parties. A nonresident insured, that is, "should not be permitted to avoid such an exclusion depending merely on the fortuity of where the automobile accident occurred." *Id.*

The Court finds this reasoning persuasive, and therefore holds that the family member exclusion clause contained in the Webers' Esurance insurance contract is enforceable and bars Ms. Weber from recovering under the liability policy. This conclusion is warranted because the policy meets the minimum requirements for out-of-state drivers mandated by § 1782(b)(2) of the MVFRL and enforcement of the family member exclusion clause is not contrary to Pennsylvania's public policy under the circumstances of this case.

## IV.    CONCLUSION

For the foregoing reasons, this Court grants Esurance's Motion for Summary Judgment, and denies the Webers' Motion for Summary Judgment.

An appropriate Order follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE